UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BARRINGTON MUSIC PRODUCTS, INC.,  )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )   Cause No. 3:16-CV-6-RLM-MGG
                                   )
MUSIC & ARTS CENTERS *et al.*,     )
                                   )
    Defendants.                    )

OPINION AND ORDER

Plaintiff Barrington Music Products, Inc. ("Barrington") sues defendants Eastman Music Company, Guitar Center Stores, Inc., Music & Arts Centers, and Woodwind and Brasswind Inc., for state and federal trademark infringement. The defendants moved for summary judgment asserting a laches defense. The court denies the defendants' motion.

I. Background

Guitar Center Stores, Inc. markets and sells musical instruments both at retail stores throughout the country and through a variety of online platforms. It owns and operates 150 Music & Arts brand retail stores throughout the country as well as more than 260 Guitar Center stores throughout the country. Barrington doesn't operate any retail locations and principally sells musical instruments through third-parties such as Amazon and Ebay.

In 2010, Guitar Center was working on developing a new name for a brand of musical instruments to be produced by Eastman Music Company. Eastman is a well-known manufacturer of woodwind and brass musical instruments, including flutes that it sells under its Wm. S. Haynes brand name and saxophones sold under the Andreas Eastman brand name. Eastman instruments are played by many famous and well-known performers, such as Earth Wind & Fire and Bob Mintzer. After vetting several name possibilities with its trademark counsel, Guitar Center eventually settled on the name "Ventus" for its new line of musical instruments. Because Eastman, as the manufacturer, provided the necessary credibility for the new line of instruments, the instruments were marketed and sold as "Ventus by Eastman" and "Ventus by Wm. S. Haynes". Prominent engraving on the instruments reinforced this co-branding, as did conspicuous branding on the carrying cases.

Guitar Center filed for trademark protection for "Ventus" on May 20, 2010 under the goods and services designation of "Musical Instruments." Its application was published for opposition on October 26, 2010. No opposition was filed and it was registered on the principal register on August 2, 2011. Barrington owns the trademark of "Vento," which is registered with the goods and services denomination of musical instruments. Barrington filed for registration of "Vento" on January 6, 2010. Barrington's application was published for opposition on May 25, 2010, five days after Guitar Center had filed the "Ventus" mark. Barrington's "Vento" was registered on the principal register on August 10, 2010.

Barrington's mark has been used in commerce since May of 2009, achieving gross sales of a little less than $700,000.

In March 2011, Guitar Center began using "Ventus" (in conjunction with "by Eastman" and "by Wm. S. Haynes") in commerce. It marketed and sold flutes, trumpets, alto saxophones, tenor saxophones, and clarinets under the "Ventus by Eastman" name. From 2011 until the end of 2015, Guitar Center built the "Ventus" by Eastman/Wm. S. Haynes brand and achieved gross sales totaling about $5 million.

The parties dispute when Barrington was put on notice of the "Ventus" line. Between 2011 and 2014, Guitar Center sold its "Ventus" products exclusively in Music & Arts retail stores—stores that were not located in Indiana or Michigan. The combined sales for 2011-2013 totaled less than $800,000. In 2014, Guitar Center dramatically expanded its "Ventus" sales, raising the annual sales to $1.4 million. In 2015, Guitar Center began selling "Ventus" instruments online through its websites. Barrington contends that, while web sales have remained a small part of Guitar Center's total sales, the sudden shift to the online marketplace in 2015 placed the "Ventus" mark squarely in competition with Barrington's mark for the first time. Guitar Center argues that, had Barrington notified it at or near the time it registered the "Ventus" mark, Guitar Center would have simply avoided a dispute and chosen another name.

Barrington also says that it regularly reviewed internet and print catalogues and other music industry publications for the purposes of market research and policing its "Vento" marks from May 2009 until now. Barrington asserts that it

3

first discovered that Guitar Center was advertising and selling musical instruments using the "Ventus" in November 2014. In February 2015, Barrington's counsel sent a letter to Guitar Music demanding that it cease and desist its use of the "Ventus" mark. Barrington engaged in negotiations with Guitar Music, attempting to settle its trademark infringement claims. When those negotiations broke down, Barrington filed this lawsuit.

All arguments relate to all the defendants, so in the interest of simplification, the court refers to all defendants as "Guitar Center" in the rest of this opinion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Weigle v. SPX Corp., 729 F.3d 724, 730 (7th Cir. 2013). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present

definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2). "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) *(*quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

III. DISCUSSION

Guitar Center contends that the doctrine of laches bars Barrington's claims, while Barrington contends that if the presumption of laches applies, the doctrine of progressive encroachment forgives the delay. Guitar Center also contends that the Lanham Act preempts Barrington's state law passing off claim.

*A. Laches*

When the evidence is viewed in the light most favorable to Barrington (the non-movant) the record doesn't support the statutory presumption of laches at this stage of the proceedings.

The doctrine of laches derives from the maxim that those who sleep on their rights, lose them. Chattanoga Mfg., Inc. v. Nike, Inc., 301 F.3d 789, 792 (7th Cir.

5

2002) (*citing* Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 820 (7th Cir. 1999)). To establish laches within the context of a trademark infringement claim, a defendant must show that "the plaintiff had knowledge of the defendant's use of an allegedly infringing mark . . . that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time." Chattanoga v. Nike, 301 F.3d at 792-793.

A plaintiff must have actual or constructive notice of the defendant's activities. *See* Blue Ribbon Feed Co. v. Farmers Union Cent. Exch., Inc., 731 F.2d 415, 419 (7th Cir.1984) (citations omitted); *see also* 6 *McCarthy on Trademarks and Unfair Competition* § 31:38 (5th ed. 2017). Of constructive notice, "the plaintiff is chargeable with such knowledge as he may have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." Chattanoga v. Nike, 301 F.3d at 793 (*citing* Johnston v. Standard Mining Co., 148 U.S. 360, 370 (1893)).

Guitar Center contends that the doctrine of laches bars Barrington's claims because Barrington had constructive knowledge of the "Ventus" mark no later than August 2, 2011, when Guitar Center registered "Ventus" on the principal register. Under the Lanham Act, registration of a mark on the principal register shall be "constructive notice" of the registrant's claim of ownership. *See* 15 U.S.C. § 1072. The Lanham Act provides no applicable statute of limitations, but courts apply the period for analogous state law claims to determine whether the doctrine of laches bars a claim under the Lanham Act. *See* Hot Wax, Inc. v. Turtle Wax,

6

Inc., 191 F.3d 813, 821 (7th Cir. 1999). Under Indiana law, the analogous statute of limitations for claims to personal property is two years. Ind. Code § 34-11-2-4; *see e.g.*, Noble Roman's Inc. v. Hattenhauer Distributing Co., No. 1:14-CV-1734-WTL-DML, 2017 WL 747536, at *3–4 (S.D. Ind. Feb. 27, 2017). "Once the relevant state limitations period has run, an allegedly infringing party is entitle to a presumption that the doctrine of laches applies." Wis. Cheese Group, Inc. v. V&V Superemo Foods, Inc., 537 F. Supp. 994, 1000 (W.D. Wis. 2008). Guitar Center asserts that because Barrington had constructive notice in 2011, Barrington delayed in bringing the present action more than double the time permitted by Indiana's statute of limitations, giving rise to the presumption of laches.

Barrington denies it had constructive notice it acquired actual knowledge of Guitar Center's use of "Ventus" in November 2014, and argues that Guitar Center's registration of the "Ventus" mark didn't provide constructive notice for purposes of laches. 15 U.S.C. § 1072 "is intended to protect against users of the registrant's trademark who might otherwise raise a defense of innocent misappropriation." Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A., 623 F.3d 440, 446 (7th Cir. 2010); *accord,* In re Int'l Flavors & Fragrances, Inc., 183 F.3d 1361, 1367 (Fed. Cir. 1999).

Barrington would have the better argument under 15 U.S.C. § 1072 as the *senior* user of "Vento," to assert that Guitar Center—the *junior* user—had constructive knowledge of the *senior* mark. Consequently, Guitar Center's use of 15 U.S.C. § 1072 doesn't provide a strong basis of constructive notice. Guitar Center points to nothing in the record to support a finding of constructive notice,

other than proof that Guitar Center registered "Ventus" on the principal register. When the facts of record are viewed most favorably to Barrington, a genuine issue exists as to when Barrington obtained constructive knowledge of the "Ventus" mark.

If Guitar Center were successful in establishing the presumption of laches, a trier of fact could reasonably infer that Barrington can rebut that presumption and excuse its delay under the doctrine of progressive encroachment. "Under this doctrine, where a defendant begins use of a trademark or trade dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." Chattanoga v. Nike, 301 F.3d at 794 (citing Kason Ind. v. Component Hardware Group, 120 F.3d 1199, 1205 (11th Cir.1997)). The doctrine of progressive encroachment is relevant in assessing whether laches applies to bar a trademark claim. *See id.*

Barrington relies on Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc. to establish progressive encroachment. AE Outfitters had actual knowledge that the defendant American Eagle Furniture had applied to register its "AE Furniture" design mark in 2006, but was only using the "AE Furniture" mark for some furniture products sold out of its warehouse. Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc., No. 11 C 02242, 2013 U.S. Dist. LEXIS 180912, at *41 (N.D. Ill. Dec. 27, 2013). Because the use of the mark was so limited, American Eagle Outfitters "chose not to oppose the defendant's registration and instead decided to wait and see whether the defendant's mark created any confusion in the

marketplace." Id. In 2009 and 2010, the defendant opened three retail stores using the name "American Eagle Furniture" in malls where American Eagle Outfitters already had retail stores. Am. Eagle v. Am. Eagle, U.S. Dist. LEXIS 180912, at *41-42. When American Eagle Outfitters sued in April 2011, American Eagle Furniture sought summary judgment on the issue of laches. The court rejected that claim, holding that the "sudden shift from operating a warehouse under a different name to opening three retail stores under the name American Eagle Furniture in malls where AE Outfitters was already operating its own retail stores is a prime example of progressive encroachment." American Eagle v. American Eagle, U.S. Dist. LEXIS 180912, at *42 (*citing* Union Carbide Corp. v. Ever- Ready, Inc., 531 F.2d 366, 388-389 (7th Cir. 1976); Indep. Nail & Packing Co., Inc. v. Stronghold Screw Prods., Inc., 205 F.2d 921, 927 (7th Cir. 1953)).

Barrington contends that Guitar Center's conduct is a "prime example" of what occurred in American Eagle. Between 2011 and 2014, Guitar Center only sold its "Ventus" products in its retail stores—stores that weren't located in Indiana or Michigan. Guitar Center dramatically expanded its "Ventus" sales, raising the annual sales from $800,000 to $5 million from 2011-2015. Although Guitar Center began its use of "Ventus" in 2011, it placed the "Ventus" line squarely in competition with Barrington's "Vento" line in 2015, when Guitar Center shifted from retail to online sales.

When Barrington learned about Guitar Center's shift to the online marketplace, it hired a lawyer and sent a cease and desist letter. When negotiations fell through, Barrington contends that it promptly filed suit in

9

January 2016—a little more than a year after it learned of the infringement. So even if Barrington learned Guitar Center was using "Ventus" in 2011, Barrington says, progressive encroachment justifies Barrington in waiting to pursue its claims until there was a real threat of confusion in the marketplace.

Guitar Center argues that progressive encroachment isn't applicable because there is no evidence that Guitar Center redirected or expanded its business into different markets, and Guitar Center's use of the internet and increase in sales was the "natural growth" of its existing business. To support this argument, Guitar Center cites persuasive authority from the Ninth Circuit[1] and the western district of Wisconsin. The Wisconsin court held that "increased sales alone do not amount to progressive encroachment," and rejected a plaintiff's contention that increased sales over a period of time "constitute a 'classic illustration' of progressive encroachment." Wis. Cheese Group, Inc. v. V & V Supremo Foods, Inc., 537 F.Supp.2d 994, 1002 (W.D. Wis. 2008).

A reasonable trier of fact could infer from this record that Guitar Center's shift from brick and mortar to the online market placed the "Ventus" mark squarely in competition with the "Vento" mark, even though Guitar Center says the shift was a minor one. That Barrington's business is solely online makes the shift more significant than it would have been had Barrington sold in different markets. Barrington's "Vento" line has been in commerce since 2009, while

---

[1] *See, e.g.*, Fitbug Ltd. v. Fitbit, Inc., 78 F.Supp. 3d 1180, 1190 (N.D. Cal. 2015). A "junior user's growth of its existing business and the concomitant increase in its use of the mark do not constitute progressive encroachment." Id. *quoting* Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n, 465 F.3d 1102, 1110 (9th Cir. 2006). As the Ninth Circuit noted in Prudential Ins. Co. of Am. V. Gibralter Fin. Corp. of Cal., 694 F.2d 1150, 1154 (9th Cir. 1982), "it is true that [defendant] has grown tremendously, but growth alone does not infringement make."

Guitar Center's "Ventus" line was sold in stores from 2011 until 2015. A trier of fact could infer from this record that Guitar Center's online sales of "Ventus"—a lucrative line of instruments—posed a threat to Barrington's successful, yet less lucrative line of instruments. Guitar Center's shift to online sales in 2015 creates a genuine dispute as to whether Barrington's delay is reasonable under progressive encroachment.

Lastly, if Barrington's delay was unreasonable, a genuine issue exists as to whether the delay prejudiced the defendants. "A delay prejudices a defendant when the assertion of a claim available for some time would be inequitable in light of the delay in bringing that claim and ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." Chattanoga v. Nike, 301 F.3d at 795; *See* Hot Wax v. Turtle Wax, 191 F.3d at 824. Prejudice may be shown if the "plaintiff's unexcused [delay] caused the defendant to rely to its detriment and build up a valuable business around its trademark." *See id.*; *see also* Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192 (2d Cir.1996); 5 McCarthy § 31:12, at pp. 31–36 to 31–37.

Prejudice is presumed when the delay is unreasonable and inexcusable. Baker Mfg. Co. v. Whitewater Mfg. Co., 430 F.2d 1008, 1012 (7th Cir. 1970). When a delay is lengthy, less proof of prejudice is required. *See* Hot Wax v. Turtle Wax, 191 F.3d at 824; Chattanoga v. Nike, 301 F.3d at 795; *see also* ABB Robotics, Inc. v. GMFanuc Robotics Corp., 52 F.3d 1062, 1065 (Fed. Cir.1995) (finding that "increasing sales" may alone constitute economic prejudice).

Guitar Center argues that it would have chosen another name had Barrington given proper notice of infringement, and that Guitar Center is prejudiced because it spent "significant sums" building its brand and selling its product. Guitar Center contends that after getting Barrington's cease and desist letter, it immediately ceased producing new instruments under the "Ventus" name and began aggressively marketing and selling off all existing "Ventus" inventory. Barrington's actions have forced Guitar Center to spend money building and developing new lines of musical instruments.

It is plausible that Guitar Center was prejudiced, but that question is predicated upon whether Barrington's delay was unreasonable. Although Guitar Center's "Ventus" line experienced a significant increase in sales—from $1.4 million in 2014 to $5 million in 2015—Barrington sent Guitar Center a cease and desist letter in November 2014, just as Guitar Center's sales were increasing. Although Guitar Center contends it was "forced" to spend money developing a new line, it fared pretty well at the end of 2015. When viewing the evidence in the light most favorable to Barrington, the non-moving party, a genuine issue exists as to whether Guitar Center was prejudiced.

B. Preemption

In the alternative, Guitar Center argues that the Lanham Act bars Barrington's state law claims, even if the laches defense fails. 15 U.S.C. § 1125(c)(6) provides:

> The ownership by a person of a valid registration…on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that:

(A)(i) is brought by another person under the common law or statute of a State; and (ii) seeks to prevent dilution by blurring or dilution by tarnishment; or

(ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

15 U.S.C. § 1125(c)(6) (2017).

Guitar Center asserts that Barrington's state law "passing off" claim asserts a claim of dilution under the Indiana's unfair competition doctrine. Burns Ind. Code Ann. § 24-2-1-13. Because "Ventus" is a registered trademark under the Lanham Act, Guitar Center contends the state-law claim is completely barred.

Although our court of appeals hasn't addressed this issue, applying 15 U.S.C. § 1125(c)(6) to Barrington's common law claim is contingent upon Barrington's success in cancelling Guitar Center's "Ventus" mark under the Lanham Act. The Ninth Circuit addressed this very issue. "Defendant's claim that [its mark's] registration acts as a bar to plaintiff's state law claim is misplaced because plaintiff's counterclaim is for cancellation of the [mark's] registration under 15 U.S.C. § 1064. As such, if plaintiff can succeed in obtaining that cancellation, the bar to state unfair competition actions found in 15 U.S.C. § 1125(c)(6) will be inapplicable." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 635 (9th Cir. 2008). Although not controlling authority, this dictum provides the court with persuasive guidance on how to proceed with this argument. Accordingly, Barrington's outstanding claim under the Lanham Act must be resolved before the court can decide whether Barrington's state-law claims are barred under 15 U.S.C. § 1125(c)(6).

IV. CONCLUSION

For the foregoing reasons, the court DENIES the defendants' motion for summary judgment [Doc. No. 50].

SO ORDERED.

ENTERED:  October 17, 2017

/s/ Robert L. Miller, Jr.  
Judge  
United States District Court