UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BARRINGTON MUSIC PRODUCTS, INC.., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CAUSE NO. 3:16-cv-006-RLM |
| MUSIC ARTS CENTERS, GUITAR CENTER STORES, INC., EASTMAN MUSIC COMPANY, and WOODWIND & BRASSWIND, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

A few matters pend in relation to the trial set to begin on May 16. Barrington asks for oral argument on two of those matters, but scheduling oral argument would delay the court's ruling, and the court believes it has enough information, or is not likely to gain more information necessary for a pre-trial ruling. Accordingly, the court denies Barrington's motion for oral argument [Doc. No. 115].

A.

At the pretrial conference, when the court addressed Barrington's motion to have judicial notice taken of the ownership and validity of the trademark at issue, the defendants came forth with a factual offer. In light of that offer, the court invited the parties to submit briefs on the issue. They have done so.

Barrington asks that the court take judicial notice that it (or its predecessor) registered the VENTO® marks with the USPTO on August 10, 2010 and submitted combined declarations of use and inconstestability with the trademark office on August 10, 2016. Based on those facts, which can be accurately and readily determined from sources whose accuracy cannot reasonably be challenged, *see* Fed. R. Evid. 201(b)(2), Barrington asks the court to further notice that its marks are incontestable under 15 U.S.C. § 1605.

The defendants respond that VMB, LLC, and not Barrington, registered the VENTO® marks. Barrington produced a document that purports to be an assignment of the marks from VMB to Barrington on December 31, 2013. In February 2015, VMB sent a cease–and–desist letter to the defendants. A week later, the Indiana Secretary of State dissolved VMB. At the beginning of April 2015, VMB filed the trademark assignment to Barrington with the USPTO. Dennis Bamber, who the court understands to have been a principal of both VMB and Barrington, testified at his deposition that he couldn't remember exactly when the trademark assignment was signed.

From these facts—which Barrington apparently doesn't dispute—the defendants argue that either VMB couldn't effectively transfer the marks to Barrington with the April 2015 notice to the USPTO because it had ceased to exist when the Secretary of State dissolved in February, or VMB assigned the

marks to Barrington in December 2013 and so misrepresented the marks' ownership when VMB sent the cease–and–desist letter in February 2015.

The defendants' arguments don't appear to have anything to do with the marks' incontestability, which in turn defeats the defendants' arguments. The undisputed facts relating to the filings with the USPTO make the VENTO® marks incontestable under 15 U.S.C. § 1065, which amounts to "conclusive evidence of . . . the registrant's ownership of the mark . . ." subject to nine specific defenses allowed despite incontestability, 15 U.S.C. § 1115(b), and the defendants don't link their argument to any of those nine specific defenses.

Beyond that, the series of events the defendants relate don't undermine Barrington's contention that the right to the marks passed from VMB to Barrington when the assignment was filed with the USPTO. The defendants assume that once it was dissolved, VMB couldn't transfer anything. That overstates the limits on what a dissolved corporation can do under Indiana law: "A dissolved corporation continues it corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including . . . disposing of it properties that will not be distributed in kind to its shareholders . . . ." Ind. Code. § 23-1-45-5-(a)(2). Mr. Bamber's inability to recall when the assignment was signed doesn't matter.

The court GRANTS Barrington's request for judicial notice of the Vento marks' ownership and validity [Doc. No. 99].

3

B.

Barrington seeks to exclude all or part of the testimony of defense expert Dr. Jeffrey A. Stec. The principal argument relates to the implied characterization of Dr. Stec as a rebuttal expert. The scheduling order set a January 31 deadline for expert disclosures "from a party with the burden of proof," and a March 30 deadline for expert disclosures "from a party offering a rebuttal expert report . . . ." The defendants identified Dr. Stec and served his report on March 30. His report claims only to "review and critically evaluate" the expert disclosures of Jeffrey Samuels, who was disclosed as an expert witness for Barrington. Barrington has decided not to present Mr. Samuels's opinion, and so contends that Dr. Stec has nothing to rebut. Barrington also argues that to the extent some of Dr. Stec's opinions might be offered on some other theory, those opinions are based on flawed methodology.

The court overrules, as a pretrial matter, Barrington's objections to Dr. Stec's testimony. Barrington might well be right that its decision not to call Mr. Samuels will make anything Dr. Stec has to say irrelevant or inadmissible. Because he wasn't disclosed by January, the court would be hard–pressed to allow him to offer opinions that are relevant only to issues on which the defendants bear the burden of proof. *See* Fed. R. Civ. P. 37(c)(1). But expert testimony isn't the only thing an expert can rebut. The court can't say that

even without Mr. Samuels, Barrington's case in chief won't include evidence for which an opinion in Dr. Stec's report might be admissible in rebuttal.

Barrington's arguments concerning the admissibility of Dr. Stec's opinions under Fed. R. Evid. 702 aren't persuasive as justification for a preemptive pretrial exclusion. First, Barrington surprisingly implies that Dr. Stec can't offer opinions based on "self serving" testimony from Barrington's Rule 30(b)(6). Setting aside the question of whose interest a witness's testimony is allowed to serve, *see, e.g.,* United States v. Sklena, 692 F.3d 725, 733 (7th Cir. 2012) ("To say that evidence is "self–serving" tells us practically nothing: a great deal of perfectly admissible testimony fits this description."), experts can base opinions on information of a sort others in the field routinely and reasonably rely, and the court has seen nothing to suggest that experts don't routinely and reasonably rely on information from knowledgeable people within the corporate hierarchy.

Second, Barrington sets forth its reasons for thinking that Dr. Stec's methodologies are substandard. There's layman's logic in what Barrington says, but Barrington doesn't support its critique with any information from the field of expertise. One reason courts allow expert testimony is that what science knows might be counter–intuitive to a layperson. *See, e.g., United States v.* Bartlett, 567 F.3d 901, 906 (7th Cir. 2009) (psychological research on accuracy of eyewitness identification might be admissible because it contradicts what

most people think). Barrington's criticisms seem better suited for cross examination.

For these reasons, while objections are trial might be well–taken, the court overrules, as a pretrial matter, Barrington's objections to Dr. Jeffrey Stec's expert testimony [Doc. No. 107].

## C.

The same general principles lead the court to overrule Barrington's objections to anticipated testimony of Joshua Lathrop. One difference between Mr. Lathrop and Dr. Stec is that there will be a Barrington expert for Mr. Lathrop to rebut. The difference is crucial because the court can't know what part of Mr. Lathrop's testimony will be strictly rebuttal until it hears the testimony of Barrington expert McSorely. The court agrees with the general principle on which Barrington relies—that a rebuttal witness ordinarily can't, under the case management order entered in his case, offer independent opinions on which the party calling him bears the burden of proof—but a rebuttal witness can (within the scope of his disclosure) explain why the opinion being rebutted is wrong. There is a fine line between offering one's own opinion on a topic and explaining why another's opinion on the topic in mistaken; that line can be difficult to find at trial, and is nearly impossible to identify before trial.

To the extent Barrington's objections are based on reliability of methodology, as with Dr. Stec, the court finds the objections either impossible to decide before trial, or as raising questions for cross-examination rather than pretrial exclusion.

The court overrules, as a pretrial matter, Barrington's objections to the defendants' rebuttal expert Joshua Lathrop [Doc. No. 107].

D.

On a different topic, at the final pretrial conference, the court asked Barrington's counsel to submit a revised proposed pretrial order, including the submissions that came after Barrington had to file the original proposed pretrial order. None has been filed; the court assumes the request has fallen between the tracks of trial preparation. The court directs counsel to submit a revised proposed pretrial order forthwith.

E.

For the foregoing reasons, the court:

(1) GRANTS Barrington's request for judicial notice of the Vento marks' ownership and validity [Doc. No. 99];

(2) DENIES Barrington's motion for oral argument [Doc. No. 115]; and

(3) OVERRULES, as a pretrial matter, Barrington's objections to defendants' rebuttal expert Joshua Lathrop and Dr. Jeffrey Stec's expert testimony [Doc. No. 107].

SO ORDERED.

ENTERED: May 10, 2018

                                      /s/ Robert L. Miller, Jr.
                                  Robert L. Miller, Jr., Judge
                                  United States District Court